FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTY EKENBARGER,<br><br>                          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br><br>                          Defendant. | NO:  2:15-CV-00202-FVS<br><br>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 14, 15.  This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation.  ECF No. 16.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 14) be granted and Defendant's Motion (ECF No. 15) be denied.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

1   party appealing the ALJ's decision generally bears the burden of establishing that

2   it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-10 (2009).

3   **FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

4        A claimant must satisfy two conditions to be considered "disabled" within

5   the meaning of the Social Security Act.  First, the claimant must be "unable to

6   engage in any substantial gainful activity by reason of any medically determinable

7   physical or mental impairment which can be expected to result in death or which

8   has lasted or can be expected to last for a continuous period of not less than twelve

9   months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

10  "of such severity that he is not only unable to do his previous work[,] but cannot,

11  considering his age, education, and work experience, engage in any other kind of

12  substantial gainful work which exists in the national economy."  42 U.S.C. §

13  1382c(a)(3)(B).

14       The Commissioner has established a five-step sequential analysis to

15  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

16  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

17  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

18  gainful activity," the Commissioner must find that the claimant is not disabled.  20

19  C.F.R. § 416.920(b).

20

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income on August 8, 2012, alleging an onset date of June 11, 2012.  Tr. 145-50.  Benefits were denied initially, Tr. 91-95, and upon reconsideration.  Tr. 99-101.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on November 13, 2013.  Tr. 36-64.  On January 24, 2014, the ALJ denied Plaintiff's claim.  Tr. 14-29.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 8, 2012, the application date.  Tr. 19.  At step two, the ALJ found Plaintiff has the following severe impairments: bipolar disorder, post-traumatic stress disorder (PTSD), personality disorder, not otherwise specified, and polysubstance abuse.  Tr. 19.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 20.  The ALJ then concluded that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, repetitive tasks and instructions. She is able to maintain attention and concentration on these tasks and instructions for 2 hour intervals between regularly scheduled breaks. The claimant is limited to only occasional judgment and decision making. She should not work in jobs where there is a production rate of pace. She can have occasional and superficial (defined as non-cooperative/non-collaborative) interactions with the public and co-workers. The claimant may need additional time (defined

as 10% more than the average employee) to adapt to any changes in the work routine.

Tr. 21.  At step four, the ALJ found Plaintiff is capable of performing past relevant work as an agricultural produce packer.  Tr. 25.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since August 8, 2012, the date the application was filed.  Tr. 25.

On June 1, 2015, the Appeals Counsel denied review, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly considered Plaintiff's past relevant work at step four;

2.  Whether the ALJ properly found Plaintiff not credible; and

3.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 3-15.

**DISCUSSION**

**A. Step Four**

Plaintiff argues the ALJ erred at step four by improperly considering Plaintiff's work as an agricultural packer as past relevant work. ECF No. 14 at 10-11. The Court agrees.

Pursuant to SSA regulations, "[a]t the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a) (4)(iv). Claimants have the burden at step four to show they are unable to return to their past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). However, the ALJ must make specific factual findings to support the conclusion that Plaintiff can perform past relevant work. *Pinto*, 249 F.3d at 845; *see also* SSR 82-62 (1982) at *4, *available at* 1982 WL 31386. Past relevant work is work that was "done within the last 15 years, lasted long enough for you to learn how to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Substantial gainful activity ("SGA") is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." §§ 404.1572, 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, it is presumed that claimant

engaged in SGA.  §§ 404.1574(a)-(b), 416.974(a)-(b).  However, if average monthly earnings are less than the amount described in the regulations, it is presumed that a claimant has not engaged in SGA.  §§ 404.1574(b)(3), 416.974(b)(3).

Here, at step four, the ALJ relied on the vocational expert's testimony to find Plaintiff is capable of performing past relevant work as an agricultural produce packer.  Tr. 25.  However, neither the ALJ, nor the vocational expert, made any findings that Plaintiff's past work as an agricultural produce packer was performed at SGA levels.  Moreover, as noted by Plaintiff, there is no evidence in the record that the work Plaintiff performed was SGA.  ECF No. 14 at 10.  Plaintiff testified, without elaboration as to her earnings, that she worked at Powell Farms from 2007 to 2011.  Tr. 41.  Plaintiff additionally testified that she worked in 2006 packing and sorting apples for two weeks.  Tr. 55.  The ALJ asked her if she was getting paid under the table because she had no recorded earnings in 2006, to which Plaintiff responded that she was "pretty sure" she was getting paid under the table or "for a place to live."  Tr. 55.  Finally, Plaintiff vaguely testified that she worked as an apple packer "back in the late 1990s and 2000."  Tr. 56.  Inconsistent with this testimony, as noted by Defendant, the earnings record indicates that for the entire year of 1997 Plaintiff earned $2,625.50; and for the entire year of 1998 Plaintiff earned $2,968.00.  Tr. 152.  Plaintiff's self-reported "work history"

1  indicates that she worked from January 1999 through January 2004 as a foreman at

2  an apple orchard; where she earned $8.00 per hour working eight hours a day, five

3  days per week.  Tr. 164.  The record does confirm minimal earnings of $469.00 in

4  2000 and $319.55 in 2004.  Tr. 152.  However, these amounts are far less than the

5  presumptive SGA amount established by SSA regulations of $700 per month in

6  2000, and $810 per month in 2004.  *See* 20 C.F.R. §§ 404.1574(b), 416.974(b);

7  www.ssa.gov/OACT/COLA/sga (outlining monthly substantial gainful amounts

8  for each year).  Thus, the record appears to confirm that Plaintiff's monthly

9  earnings are presumptively *not* performed at SGA levels.  *See id.*

10      Defendant argues that the ALJ's findings at step four should be upheld

11  because "earnings can be a presumptive, but not conclusive sign of whether a job is

12  substantial gainful activity."  ECF No. 15 at 14-15 (citing *Lewis v. Apfel*, 236 F.3d

13  503, 515 (9th Cir. 2001)).  However, to overcome the presumption that Plaintiff's

14  earnings were not at SGA levels, the burden shifts to the ALJ to make findings

15  supported by substantial evidence that Plaintiff engaged in SGA despite the low

16  earnings.  *Lewis*, 236 F.3d at 515; *see also* 20 C.F.R. §§ 404.1574(b)(3)(ii)

17  (outlining when the ALJ may consider other information in addition to earnings to

18  determine whether Plaintiff engaged in SGA despite falling below the presumptive

19  gainful activity level).  Here, the ALJ did not make any explicit findings that

20  Plaintiff's previous work as an agricultural produce packer constituted SGA

despite earnings that fell below the presumptive substantial gainful activity level.

"Requiring the ALJ to make specific findings on the record at each phase of the

step four analysis provides for meaningful judicial review. When … the ALJ

makes findings only about the claimant's limitations, and the remainder of the step

four assessment takes place in the [vocational expert's] head, we are left with

nothing to review." *Pinto*, 249 F.3d at 847.

For all of these reasons, the ALJ erred by failing to make any findings as to

whether Plaintiff's previous work as an agricultural produce packer was SGA.

Thus, the ALJ's finding at step four that Plaintiff could perform her past relevant

work was not supported by substantial evidence.  On remand, the ALJ must

reconsider the entire step four finding, including specific findings as to whether

Plaintiff's previous work was SGA pursuant to applicable regulations and SSA

policy.  As this is a threshold issue, it is unnecessary at this time for the Court to

consider Plaintiff's additional challenges to the ALJ's step four finding.

**B. Adverse Credibility Finding**

Next, Plaintiff faults the ALJ for failing to provide clear and convincing

reasons for discrediting her symptom claims.  ECF No. 14 at 3-8.

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

1    impairment which could reasonably be expected to produce the pain or other

2    symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

3    "The claimant is not required to show that her impairment could reasonably be

4    expected to cause the severity of the symptom she has alleged; she need only show

5    that it could reasonably have caused some degree of the symptom." *Vasquez v.*

6    *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

7         Second, "[i]f the claimant meets the first test and there is no evidence of

8    malingering, the ALJ can only reject the claimant's testimony about the severity of

9    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

10   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

11   citations and quotations omitted).  "General findings are insufficient; rather, the

12   ALJ must identify what testimony is not credible and what evidence undermines

13   the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

14   Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

15   must make a credibility determination with findings sufficiently specific to permit

16   the court to conclude that the ALJ did not arbitrarily discredit claimant's

17   testimony.").  "The clear and convincing [evidence] standard is the most

18   demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

19   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

20   924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ generally found Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for several reasons.[1]  Tr. 22-23.

### 1. Improvement with Medication

_____

[1] Defendant argues "the ALJ also noted Plaintiff made inconsistent statements concerning her use of illicit substances."  ECF No. 15 at 7-8.  However, the portion of the ALJ's decision cited by Defendant to support this argument was only offered as a reason to reject the medical opinion of Dr. John Arnold.  Tr. 23-24.  The ALJ did not cite this evidence as a reason to discount Plaintiff's credibility, and the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

First, the ALJ found that "[w]hile the medical expert, Dr. Rubin, noted serious symptoms during the June 2012 to August 2012 timeframe, records subsequent to that period show that with the proper medication, [Plaintiff] showed significant improvement and that treatment has been largely effective." Tr. 22. The ALJ additionally noted Plaintiff's testimony that she believed she could work while on medication that alleviated symptoms, including: hallucinations, nightmares, fatigue, and lack of motivation.[2] Tr. 23, 41-42, 50-51. An ALJ may rely on the effectiveness of treatment to support an adverse credibility finding. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ relied on report that Plaintiff's symptoms improved with the use of medication). Here, the ALJ cited reports by Plaintiff that her energy level and

_____

[2] Plaintiff cites this testimony to argue that the ALJ improperly relied on Plaintiff's daily activities as a reason to discount Plaintiff's credibility. ECF No. 14 at 7-8. Defendant also argues that the ALJ properly relied on evidence of Plaintiff's daily activities to discount her credibility. ECF No. 15 at 8-9. However, while the ALJ addressed Plaintiff's daily activities in other parts of the decision, she did not appear to offer evidence of daily activities as a reason to reject Plaintiff's credibility. The Court declines to address reasons not offered by the ALJ. *See Bray*, 554 F.3d at 1226.

mood were "good" on her current medications (Tr. 318, 338, 392); and a note by her treating provider that she was doing "quite well" on her medication regime (Tr. 427, 432).  However, the same treating providers noted that Plaintiff's anxiety remained problematic even with medication.  Tr. 423, 429-30, 433.  The ALJ also failed to consider records indicating an unsuccessful attempt to taper Plaintiff off the anti-psychotic medication Risperdal in December 2012 due to side effects (Tr. 425), which was quickly followed by an increase in the Risperdal dosage after reports of heightened anxiety (Tr. 385, 431-32).  Moreover, as noted by the ALJ when discussing Plaintiff's testimony regarding her ability to work while on medication, Plaintiff testified that her symptoms "resurfaced again 30 days prior to the hearing when she was taken off one of her medications, Risperdal, because of side effects," Tr. 23, 49-50, and her doctors were trying new medications to replace the Risperdal.  Tr. 49.  However, the ALJ failed to consider medical records supporting Plaintiff's testimony that her mental health symptoms reappeared after stopping the Risperdal.  Tr. 441-43.

After considering the evidence offered by the ALJ to support the finding that "with the proper medication" Plaintiff showed "significant improvement" and "treatment has been largely effective," Tr. 22; the Court finds the ALJ appeared to rely only on portions of the record that favored her ultimate conclusion that Plaintiff was not credible.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.

1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it by

ignoring competent evidence in the record that suggests an opposite result").  Here,

Plaintiff testified that since going off the Risperdal her symptoms increased,

including: hearing voices, lack of motivation, depression, bad dreams, anxiety, and

mood swings.  Tr. 49-54.  This is consistent with treatment notes indicating an

increase in those symptoms.  Tr. 441-43.  For all of these reasons, and after an

exhaustive independent review of the record, the Court finds the ALJ's reasoning

regarding alleged improvement in Plaintiff's symptoms due to medication, which

was subsequently discontinued due to side effects; is not a clear and convincing

reason, supported by substantial evidence, to find Plaintiff not credible.

### 2. Lack of Objective Medical Evidence

Next, the ALJ found the "[o]bjective medical evidence does not support the

degree of limitation the Plaintiff has alleged."  Tr. 22-23.  In support of this reason,

the ALJ cited a treatment note from December 2012 indicating Plaintiff's mood

and affect were normal, with linear thought process, and good insight and

judgment.  Tr. 426.  The ALJ also noted Plaintiff's presentation in September 2012

with euthymic and bright affect, and endorsement of "no particular stressors at the

moment."  Tr. 330.  Finally, the ALJ cited a mental status exam in October 2012

indicating Plaintiff was able to recall two of three objects after a five minute delay

and spell the word "table" backward and forward.  Tr. 329.  However, as argued by

Plaintiff, treatment notes from the same limited time frame also included evidence

that could reasonably be interpreted more favorably to the Plaintiff, including:

doing "fairly well" and being encouraged to get into counseling in February 2013,

Tr. 429-29; high anxiety in March 2013 and May 2013, Tr. 429, 433; and the same

mental status exam from October 2012 indicating that Plaintiff's thought process

and content, orientation, fund of knowledge, and concentration were not within

normal limits, Tr. 328-29.  Moreover, the most recent medical evidence in late

2013, as discussed *supra*, indicated an increase in symptoms since discontinuing

anti-psychotic medication, including: night terrors, problems sleeping, depression

including suicidal feelings "from time to time," and auditory hallucinations.  Tr.

441-43.  Finally, while medical evidence is a relevant factor in determining the

severity of a claimant's disabling effects, subjective pain testimony may not be

rejected *solely* because it is not corroborated by objective medical findings.

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added).  As

discussed above, the ALJ's other reason for rejecting Plaintiff's symptom

testimony is not clear, convincing, and supported by substantial evidence.  As

such, even if the objective medical evidence does not support the level of

impairment claimed, the adverse credibility finding is inadequate because lack of

objective evidence cannot be the sole basis for discrediting Plaintiff's testimony.

1    Based on the foregoing, the ALJ failed to cite specific, clear and convincing

2    reasons, supported by substantial evidence, for the adverse credibility finding.  On

3    remand, the ALJ should reconsider the credibility finding. [3]

4    **C. Medical Opinions**

5    In addition, Plaintiff faults the ALJ for discounting the medical opinions of

6    medical expert Dr. Stephen Rubin, and treating physician Dr. Bethany Lynn.  ECF

7    No. 14 at 8-10.

8    There are three types of physicians: "(1) those who treat the claimant

9    (treating physicians); (2) those who examine but do not treat the claimant

10   (examining physicians); and (3) those who neither examine nor treat the claimant

11

12   [3] The ALJ also considered lay witness statements from Plaintiff's boyfriend Jacob

13   Powell, and found his statements "generally reflect the same allegations made by

14   the claimant, which are not entirely credible for the reasons discussed [earlier in

15   the decision]."  Tr. 24-25.  The parties agree that the ALJ may reject statements

16   from lay witnesses that are based on the Plaintiff's properly rejected subjective

17   limitations.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.

18   2009).  However, as discussed *supra*, Plaintiff's subjective complaints were not

19   properly considered by the ALJ.  Thus, on remand, the ALJ should reconsider the

20   lay witness testimony.

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."
*Holohan,* 246 F.3d at 1201–02 (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *See Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–831).

*1. Bethany Lynn, M.D.*

In October 2012, Plaintiff's treating physician, Dr. Bethany Lynn, completed a psychological/psychiatric evaluation of Plaintiff.  Tr. 394-97.  She opined that Plaintiff would have numerous moderate functional limitations; as well as marked limitations in several areas, including: being aware of normal hazards and taking appropriate precautions, and maintaining appropriate behavior in a work setting. Tr. 396.  Dr. Lynn also noted that even on medication Plaintiff's thought process was mildly tangential, concentration was not in normal limits, insight was fair, and judgment was impaired.  Tr. 397.  Moreover, the ALJ cited Dr. Lynn's treatment note opining that Plaintiff would have a very difficult time with most jobs given her concentration issues.  Tr. 24, 424.  The ALJ assigned little weight to this opinion for the sole reason that "Dr. Lynn relied heavily upon [Plaintiff's] reported symptoms, which, as discussed [earlier in the decision], are not entirely credible." Tr. 29.  An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  However, neither the ALJ, nor the Defendant, offer any evidence that Dr. Lynn relied "to a large extent" on Plaintiff's subjective complaints as opposed to the clinical findings cited in her opinion, Tr. 397, and presumably the observations made during previous treatment of Plaintiff.  Moreover, as discussed *supra*, the ALJ erred in her assessment of

Plaintiff's credibility, and must reconsider that analysis upon remand.  For all of these reasons, this was not a specific and legitimate reason, supported by substantial evidence, to reject Dr. Lynn's opinion.  On remand, the ALJ must reconsider Dr. Lynn's opinion.[4]

### 2.  Stephen Rubin, M.D.

Dr. Stephen Rubin testified that Plaintiff has a long history of mental health issues, including: depressive disorder, "probably" a bipolar disorder, an anxiety disorder, "probably" PTSD, and "clearly a polysubstance abuse and dependence." Tr. 42-43.  Dr. Rubin testified that Plaintiff "may have qualified and met the listing," for the period of June through August of 2012, and additionally opined that substance abuse was likely material during that short period.  Tr. 44.  As

---

[4] Plaintiff argues the ALJ's RFC and hypothetical failed to account for Plaintiff's limitations, as opined by Dr. Lynn.  ECF No. 14 at 11-13.  As discussed above, the ALJ erred by improperly rejecting Dr. Lynn's opinion.  Thus, on remand, the ALJ should reassess the RFC and, if necessary, reconsider the hypothetical posed by the ALJ to ensure it properly includes all of Plaintiff's psychological limitations supported by substantial evidence.  *See Osenbrock v Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").

correctly noted by the ALJ, this period does not meet the durational time frame

required for a finding of disability.  Tr. 23; *see* 42 § U.S.C. 423(d)(1)(A) (in order

to be found disabled, Plaintiff's impairments must have lasted or be expected to

last for a continuous period of not less than 12 months).  Dr. Rubin further opined

that at "present, with medication and treatment," Plaintiff would not meet or equal

the listing, "based on 12.04, 12.06 or 12.09."  Tr. 44.  However, upon questioning

by Plaintiff's counsel, Dr. Rubin noted that "medication is very, very important"

for Plaintiff, and answered "yes" to the question "do you believe that her condition

would last 12 months or longer, given the change in medication with her symptoms

returning."  Tr. 48.  The ALJ found that:

> [Plaintiff's counsel] failed to inform Dr. Rubin that [Plaintiff's] treating
> providers were trying other medications to replace the Risperdal. As there is
> no objective basis upon which to conclude this disability would continue for
> 12 months as [Plaintiff's] symptoms have, in the past, been well controlled
> on medication, with the exception of the period of June 2012 to August
> 2012. There is no reason to believe that [Plaintiff's] treating physicians will
> not quickly find another medication that will work just as well, so any
> opinion as to future duration at this point is clearly speculative, based on
> incorrect factual basis, i.e., lack of information about medical trials, and is
> therefore, given no weight.

Tr. 23.  Generally, the ALJ is responsible for "resolving conflicts in medical

testimony, and for resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  It was reasonable for the ALJ to find the medical expert's

testimony regarding "future duration" was speculative, and to highlight the

documented attempts by Plaintiff's physicians to replace the discontinued

Risperdal medication.  Tr. 23.  However, it is equally speculative, and arguably an inappropriate substitute of the ALJ's own medical judgment for that of the medical expert, for the ALJ to find there is "no reason to believe that [Plaintiff's] treating physicians will not quickly find another medication that will work just as well." Tr. 23; *see Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding it inappropriate for the ALJ to substitute his or her own medical judgment for that of medical professionals); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make [his or her] own independent medical findings").  Moreover, the ALJ fails to consider Plaintiff's testimony that she had already been placed on an alternative medication, but "it wasn't really working out" so they were going to "try something new."  Tr. 49. Additionally, as discussed *supra*, despite some improvement while on Risperdal, the ALJ failed to consider evidence that Plaintiff experienced an increase in symptoms after being taken off Risperdal on two separate occasions.  Tr. 425, 431-32, 441-43.  Thus, the Court finds the ALJ's assignment of no weight to this portion of Dr. Rubin's expert medical opinion was not supported by substantial evidence.  Upon remand, and particularly in light of need to reconsider the ALJ's credibility findings based on alleged improvement with medication as discussed *supra*, the ALJ should further develop the record with current treatment records

1  regarding the status of Plaintiff's medication; and, if necessary, order a

2  consultative examination and/or testimony by a medical expert.

3  **CONCLUSION**

4     The ALJ's decision was not supported by substantial evidence and free of

5  legal error.  Remand is appropriate when, like here, a decision does not adequately

6  explain how a conclusion was reached, "[a]nd that is so even if [the ALJ] can offer

7  proper post hoc explanations for such unexplained conclusions," for "the

8  Commissioner's decision must stand or fall with the reasons set forth in the ALJ's

9  decision, as adopted by the Appeals Council."  *Barbato v. Comm'r of Soc. Sec.,*

10  923 F.Supp. 1273, 1276 n. 2 (C.D.Cal. 1996) (citations omitted).  On remand, the

11  ALJ should reconsider the step four finding.  Additionally, the ALJ must

12  reconsider the credibility analysis.  Moreover, the ALJ must reconsider the medical

13  opinion evidence, and provide legally sufficient reasons for evaluating these

14  opinions, supported by substantial evidence.  If necessary, the ALJ should order

15  additional consultative examinations and/or take additional testimony from

16  psychological experts.  Finally, the ALJ should reassess Plaintiff's RFC and, if

17  necessary, take additional testimony from a vocational expert which includes all of

18  the limitations credited by the ALJ.

19  **ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

20

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, be **GRANTED**; and the matter remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment, ECF No. 15, be **DENIED**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

§ 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED September 28, 2016.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE